**ALAN J. GREENSTEIN, P.A.**
8121 S.W. 138th St
Palmetto Bay, Fl. 33158
Telephone: 305-772-7083 / Fax: 305-938-5038
agreenstein004@hotmail.com

November 9, 2024

David J. Smith
Clerk of the United States Court of
Appeals for the Eleventh Circuit
56 Forsyth St. N.W.
Atlanta, Ga. 30303

Re:   McDonough v. Garcia, et. al,
       Case No. 22-11421-J

Dear Mr. Smith:

The Court has asked counsel to respond to the following: Whether the City of Homestead's restrictions on James McDonough's speech (relating to Count II) are constitutional. The answer is no.

This Court has found that the City's Council meetings are a limited public forum, so the City may impose restrictions as long as they "…are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985). For example, it is reasonable to limit the topics that speakers may address; it is reasonable to require the speakers to register ahead of the meeting; it is reasonable to limit the time an individual may speak; it is reasonable to pass rules of decorum that apply to everyone; the City can even limit the type of speakers that can address the council (such as residents only). What is not reasonable is to prohibit one individual from speaking before the Council for an alleged disruption at a prior meeting

1

The purpose of the Homestead Council meetings, at least in the public comment section in which McDonough spoke, is to permit citizens to speak on issues relevant to the City. As a matter of fact, Florida law requires the Council to hear from members of the public. Florida Statute §286.0144(2) says, in pertinent part, that "[m]embers of the public shall be given a reasonable opportunity to be heard on a proposition before a board or commission." The trespass order prevented Dr. McDonough from being heard on any proposition before the City Council.

Courts around the country when faced with similar restrictions as the City's, have found them to be unconstitutional.[1] The District Court's opinion in *Walsh v. Enge*, 154 F. Supp. 3d 1113 (D. Or. 2015), best exemplifies why the restrictions imposed on McDonough were unconstitutional.

Walsh brought a civil rights action seeking an injunction against enforcement of a city ordinance that authorized officials to indefinitely exclude individuals who they believe will disrupt a city council meeting. The court, in granting the injunction, held that the ordinance violated the First Amendment because it allowed for prospective exclusion of a speaker based solely on a finding that the person had been disruptive in the past. "But no matter how many meetings of a city council a person disrupts, he or she does not forfeit or lose the future ability to exercise constitutional rights and may not be prospectively barred from attending future meetings. Our democratic republic is not so fragile, and our First Amendment is not so weak." *Id* at 1118.

The court in coming to that conclusion analyzed how the City could show that a restriction is reasonable. "To show that a restriction is reasonable, the government must offer evidence that the restriction reasonably fulfills a legitimate need. Public safety concerns, the avoidance of

---

[1] The only exception counsel could find, was the lower court's decision in this case.

disruptions, and the existence of alternative communication channels are all relevant to a restriction's reasonableness." (internal citations omitted). *Id*. at 1129.

First, the court emphasized that the Mayor had the ability to maintain decorum by ordering an individual who causes a disruption to leave the meeting immediately. But that does not extend to a prospective exclusion that is open for public comment. "The Ninth Circuit has emphasized that in a city council meeting, the council may exclude individuals for actual disruption, but the council may not exclude people for constructive disruption, technical disruption, virtual disruption, nunc pro tunc disruption, or imaginary disruption. The City cannot define disruption so as to include non-disruption....Actual disruption means actual disruption." (internal citations omitted) *Id. at 1131-1132*. The court held that the alternative to prospective exclusion is to order a disruptive person to leave the meeting until it has concluded. *Id* at 1132.

The court then found that the Plaintiff had never actually threatened anyone with violence or encouraged anyone else to commit violence. He voluntarily left the meeting when the Mayor ordered him to leave. "In this case, mere speculation that some persons may make others feel unsafe or engage in additional disruptions is an insufficient basis upon which to erect a governmental power to bar those who wish to express their views from participating in public debate. Here, with other alternatives readily available to the City, avoidance of future disruption simply does not justify the prospective exclusion ordinance at issue." *Id*. at 1132

Lastly, …"[t]he reasonableness inquiry for restrictions in limited public forums also takes into account whether the restrictions imposed leave open alternative channels of communication." *Id* at 1132. The court found that there were insufficient alternative channels available to the plaintiff. "Thus, prolonged and prospective exclusions defeat the very purpose of the forum: to provide the opportunity for discourse on public matters." *Id* at 1133.

3

The court in granting the injunction summarized its findings: "Even drawing all reasonable inferences in Defendants' favor, to prospectively exclude Walsh, or any other individual, based on a past incident, or even several past incidents, of disruption is not exclusion from a given meeting for actual disruption: it is an impermissible prospective exclusion for possible or assumed disruption in the future." *Id.* at 1133.

Similarly here, the City's restrictions prohibiting McDonough from speaking at future council meetings did not fulfill a legitimate need and were not reasonable. He did not violate the rules of decorum, nor did he make any comments that could be considered threats, including to Councilman Maldanado.[2] Despite the fact that Sergeant Garland Wright might have heard similar statements out on the streets, there were armed police officers attending the meeting and a podium and dais between McDonough and Maldonado. Public safety, now or in the future, was not an issue that would permit a prospective speaking ban.

The alleged disruption occurred after McDonough was forced to stop speaking and left the meeting. He spoke critically of Sergeant Wright after he had exited the Council chambers. The meeting was not delayed nor effected in any material manner. As in *Walsh*, the wholesale exclusion of McDonough, preventing him from speaking at or attending future Council meetings because of comments he made outside of the Council chambers was unreasonable in light of the purpose of the meeting.[3]

Additionally, while the ban itself may have been viewpoint neutral, its enactment was clearly based on viewpoint discrimination. It is indisputable that had McDonough praised the City

---

[2] Additionally, he left the council meeting when ordered to do so by the Sergeant-at-Arms.
[3] Even if McDonough had disrupted the meeting, the indefinite ban imposed by the City would still be unreasonable and unconstitutional.

4

of Homestead and Councilman Maldonado instead of criticizing them he would not have been removed from the podium and subsequently trespassed.

Further, the prospective ban of McDonough did not leave open any alternative channels of communication. Writing letters, sending emails, or calling Councilman are not reasonable alternative channels of communication in light of how unique the Council meeting is. All of the Council members, the Mayor, the City Attorneys, as well as the police and members of the public are present. The proceedings are on video and preserved by the City of Homestead for anyone to view at a later time. Those other methods are not comparable to the delivering of his messages in person at the meetings or to the entire council at the same time.

Similar to *Walsh,* the City's failure to select other simpler alternatives to a complete ban on McDonough attending or speaking at Council meetings suggests that the restriction was not reasonable. "Here, the simpler available alternative is removal from any meeting that a person actually disrupts." *Walsh,* at 1129.

But *Walsh* is not the only case that has addressed prospective bans from speaking at public meetings, be they school boards, city councils or other such meetings.

- *Reza v. Pearce*, 806 F.3d 497 (9th Cir. 2015). Salvador Reza was banned from the Arizona Senate building at the state capital because of his alleged disorderly and disruptive behavior at a previous Senate hearing. When he returned to the building to speak with a Senator, he was barred from entering the building. The Circuit Court found that, "Senator Pearce's solution, imposing a complete bar on Reza's entry into the Building, clearly exceeds the bounds of reasonableness clearly established by *White v. City of Norwalk,* 900 F.2d 1421 (9th Cir.1990), *Kindt v. Santa Monica Rent Control Bd.,* 67 F.3d 266 (9th Cir.1995) and *Norse v. City of Santa Cruz*, 629 F. 3d 966 (9th Cir.2010), as a response to a single act of disruption…" *Id.* at 505.

"…[A]ctual disruption was required to eject a person from a limited public forum, and that the defendant cannot define disruption so as to include non-disruption." (internal citations omitted) *Id.* at 506.

- *Miller v. Heimuller*, 2023 WL 2474345, (D. Or. Mar. 13, 2023). The plaintiff was a Scappoose City Councilor, within Columbia County, Oregon, who was banned from attending the Columbia 9-1-1 Communications District meetings because the Defendants implied he had sent sexually explicit images. The court granted the TRO stating that "[p]rospective bans from a limited public forum are generally unreasonable because they are not based on actual disruption." *Id* at *6.[4]

- *McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79 (D. Me. 2022). Shawn McBreairty was banned from entering the RSU 22 School Board property for approximately eight months. This was based on his alleged disruptive behavior at a number of meetings. Although there were some factual disputes, the court issued the TRO. "Singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else in RSU 22—is unreasonable." (internal citations omitted) *Id.* at 96.

- *Kugler v. Bd. of Educ. of the City of Chicago*, 2017 WL 3581176 (N.D. Ill. Aug. 18, 2017). The plaintiff moved for a preliminary injunction setting aside restrictions placed on his access to the Chicago Public Schools (CPS) property. Mr. Kugler, a teacher's union representative (CTU), was alleged to have been disruptive on a number of occasions. The court found that

---

[4] The case came before the same Judge in *Miller v. Heimuller*, 2024 WL 1075272, at *2 (D. Or. Mar. 12, 2024) on motions for summary judgment. Based on factual discrepancies, the court partially granted and denied the motions.

"[w]hile the Board's action need not be narrowly tailored to its interests in education and safety, the Court concludes that indefinitely banning Kugler from engaging in any expressive activity on CPS property—while having permitted him to access CPS property since 2010, and continuing to permit such activity by other CTU representatives is unreasonable." *Id* at *9.

The Board did advise the court that there might be a process, although it was unspecified, by which the ban would be lifted. "But the fact that the Board envisions some process—an unspecified, seemingly arbitrary one, at that—for lifting the ban in the future would indicate that even it believes that a lifetime ban would be unreasonable." *Id* at *10.

- *Mama Bears of Forsyth Cnty. v. McCall*, 642 F. Supp. 3d 1338 (N.D. Ga. 2022). Alison Hair, one of the plaintiffs in the case, was banned from speaking before the school board until she agreed in writing to follow the rules of the board's meetings. She sought a preliminary injunction to enjoin enforcement of that restriction. In granting the injunction, the court cited *McBreairty,* and held that "[a] permanent ban on Ms. Hair's attendance at Board meetings is unreasonable. And the Board cannot require Ms. Hair to first waive her First Amendment rights in order to exercise those same rights." *Id.* at 1362.

- *Wilson v. N. E. Indep. Sch. Dist.,* 2015 WL 13716013, (W.D. Tex. Sept. 30, 2015). The plaintiff was the guardian of children who attended school at the school district. At a monthly meeting of the Board of Trustees of the District, Wilson had a discussion with the Director of HR outside the room where the meeting was taking place. She allegedly became hostile, called him a liar and assaulted him by grabbing the fingers of this right hand. Based on inappropriate behavior at the meeting, Wilson was told she would need written permission to appear at any District facility, including Board meetings, for the next two years.

7

The court found that completely preventing the plaintiff from expressing opinions at the board meeting was unreasonable in light of this type of forum. If safety was a concern, the court held that the police could have monitored Wilson closely and asked her to keep her distance from other District employees. The court stated that any restrictions imposed do not have to be narrowly tailored but there "…must at least be some tailoring for the restrictions to be reasonable in light of the forum. …[A] categorical ban on speech is not tailored at all, as it forecloses a means of communication." (internal citations omitted) *Id*. at *6. The ban on Wilson participating in a limited public forum that is open and available to others was a prior restraint on her First Amendment freedom of expression and unlawful. *Id*. at *6

- *Vollmecke v. Indep. Sch. Dist.*, 2023 WL 11200382, (W.D. Mo. Dec. 11, 2023). The plaintiff, after missing his allotted time to speak at the school district's public meeting, refused to stop speaking after being directed to by the Director of Public Safety. This was the third time he had caused some type of incident at a district meeting. He was arrested and advised by letter that he was prohibited from attending any event on District property for one year. The court found that comparing the plaintiff's actions with the severity of the ban was not reasonable, as other federal courts have ruled in similar circumstances. *Id.* at *4

The City of Homestead, nonetheless, has claimed that their exclusion was lawful because McDonough was presented with a procedure to enable him to return to City Hall. That "procedure" was to allow him to write a letter. McDonough was not told to whom he should write the letter nor how his re-admittance would be handled. The provisions in the Rules of Decorum that permitted the banning of an individual from speaking before the Council and the procedures for readmittance were repealed by a majority vote of the Council in April of 2016 (Resolution No. R2016-04-42). That made Wright's offer both insincere and non-existent.

However, whether Dr. McDonough was provided a mechanism to return to the Council meetings is irrelevant to the reasonableness of the ban in the first place. If McDonough had taken up the City's offer to write a letter (presumably to the same people who imposed the ban) and it had been rejected, that would not have made the trespass order any more reasonable. On the other hand, if the City relented and allowed McDonough to return and speak at the September 2016 council meeting, that would not undo the unconstitutional trespass order that prevented him from speaking at the August 2016 meeting. This mechanism does not save an otherwise unconstitutional trespass order.

In addition to the case law cited above, there are two other factors unique to the City of Homestead that render the restrictions unconstitutional. First, in April of 2016 as noted above, the City Council amended its Rules of Decorum eliminating the ability of the Mayor (or anyone) to bar a disruptive attendee from a further audience before the Council. The City's own rules have made such a ban unreasonable. Second, allowing Dr. McDonough to return to the Council meetings a few months later without writing the letter or having the trespass notice formally withdrawn **demonstrates** that the ban on McDonough was unconstitutional.

The City of Homestead placed the trespass order on McDonough because he *might* be disruptive, not because he *is* being disruptive. As the Ninth Circuit held in *Reza v. Pearce*, the definition of actual disruption does not include non-disruption. *Id*. at 506. That is why all of the courts across the country have rejected prospective bans such as the City imposed on McDonough.

There were two motions for summary judgment filed in this case, one by each party. When this Court takes into account all of the factors listed above as well as the case law from around the country, it is clear that the prospective and indeterminate ban imposed by the City against

9

McDonough was unconstitutional.  As to Count II of the Amended Complaint, the Court should deny the City's motion and grant Dr. McDonough's motion

Sincerely,


*/s/Alan Greenstein*
Alan Greenstein
Attorney for James Eric McDonough


cc: Counsel of record

*James McDonough v. Carlos Garcia, et al.*, Case No. 22-11421-U

**STATEMENT OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Plaintiff-Appellant does not have a parent corporation and is not a publicly held corporation.

Interested parties are as follows:

Bell, Daniel; Chief Deputy Solicitor General of Florida, Amicus Curiae

City of Homestead, Florida; Defendant-Appellee

Flanagan, Anne; Weiss, Serota, Helfman, Cole & Bierman, P.L., Attorney for the Defendants-Appellees

Florida League of Cities, Amicus Curiae

Garganese, Anthony; Garganese, Weiss, D'Agresta & Salzman, P.A., Amicus Curiae

Garcia, Carlos; Defendant-Appellee

Golembiewski, Kevin A.; Deputy Solicitor General of Florida, Amicus Curiae

Greenstein, Alan; Attorney for the Plaintiff-Appellant

Guedes, Edward G.; Weiss, Serota, Helfman, Cole & Bierman, P.L., Attorney for the Defendants-Appellees

Mandel, Matthew; Weiss, Serota, Helfman, Cole & Bierman, P.L., Attorney for the Defendants-Appellees

McDonough, James Eric; Plaintiff-Appellant

Moody, Ashley; Attorney General of Florida, Amicus Curiae

Moreno, Hon. Frederico A.; U.S. District Court Judge

O'Leary, Erin J., Garganese, Weiss, D'Agresta & Salzman, P.A., Amicus Curiae

State of Florida, Amicus Curiae

Whitaker, Henry C.; Solicitor General of Florida, Amicus Curiae

Wright, Garland; Defendant-Appellee